is the case of Bill Bailey versus Terry Keeton and Cindy Keeton doing business as TLC Properties and All-American HVAC. We have Mr. Rick Berticchio for the appellant and we have Mr. Stephen Cullison for the appellee. You may proceed. Please report, counsel. My name is Rick Berticchio and our office represents the plaintiff, counter-defendant appellant William Bailey. Your Honor, this is an appeal for the circuit court of Montgomery County. At the bench trial, the trial court found in favor of the plaintiff and awarded damages. The issue on this appeal is a rather simple one. It's whether the trial court's award of damages was against the manifest way of the evidence. The appellant is requesting the case be remanded with the orders of the trial court to award additional damages. The relevant facts, Your Honor, are that Bailey employed the Keetons to perform some repair and rehabilitative services to a commercial building owned in Litchfield, Illinois. The Keetons had prepared a written contract between the parties. During construction, an issue developed as to whether top-pointing work that needed to be performed on the south wall of the building under the contract only talked about a small northwest corner of that wall or the entire wall of this two-story building. The contract provided for a total price of $24,000 and $18,000 had been paid, leaving $6,000 unpaid. The trial court committed a finding that the entire south wall was to be covered by top-pointing under the contract. And this finding had not been challenged in his law of the case. The trial court then, after hearing all the evidence, indicated that with $6,000 left, he believed that $6,000 was the part that was set aside for the top-pointing or work on the south wall, did a set-off, and then awarded other damages with a total amount of $1,619.86, which for different repairs are, again, not involved in this issue. The only issue about this case is the top-pointing of the south wall. At the trial, there was independent evidence and only one witness as to what it would cost to top-point the entire south wall. Remember that the appellees wanted to say we only had to top-point the small northeast corner of that wall. The appellant said, no, the entire south wall. The trial court made a finding, the entire south wall under the contract. The witness, a man named Daniel Brennan said, who was a masonry contractor for over 30 years, that the top-pointing of the entire south wall, it was going to cost approximately $36,407. Provided written estimate, that estimate was admitted into evidence. That was a phenomenal number to me. It's a large number. The entire contract was, what, $24,000? Yes, sir. Where did they come up with this expert that came up with $36,000? Well, he's an expert that I put on. I contacted a local top-pointing expert and had him say what's going to cost to top-point that south wall. There's no evidence in the record to dispute that that's not the right thing. Now, there is the Keating's argument, of course. We only want to top-point a small corner. But that's law and case. That wasn't appeal. The trial court made a finding that based on the evidence of the contract and also finding that the contract was written by the Keatings, the Catholic was true against them, it was the entire south wall. Now, is that the reason that it was $36,000? That's what the cost of the entire south wall. My client always pretended it said the south wall, and that's what it said, and he accepted their bid. Let's talk about Bailey's testimony because there's an issue in the case about Bailey's testimony. Bailey being my client. If you guys would look at the transcript that was submitted as part of the record, I call your attention to pages 72 to 74, where this issue was discussed. This is a commercial building, and the work to be done was the front facade of the building was going to be done. Now, this was a time of doing some revamping and giving credits to the companies to redo their fronts of their building. The evidence is that my client had a bid from another contractor, 17-5, to do, I think it was 17-6, to do the entire front facade. The Keatings gave a bid to do the front facade of $18,000, and this is all on that page 72 to 74. So I wasn't going to pay more to have the same work done, so we talked to the Keatings about doing the south wall, two-story wall, and the east wall, which was the back of the building. I'm sorry, the west wall, the back of the building. The Keatings gave him a bid that said, we're giving you a bid for $24,000 to do the south wall included. We can't do the west wall for that. Now, in a question from me to my client, what did the Keatings set aside, in your opinion, to do the south wall? They set aside $6,000, but that's a pretty easy answer mathematically when you realize two companies that said it costs you $18,000 to do the front, and the whole project was $24,000. The front was going to be the same work by both parties, so what's the side wall going to be? Well, mathematically, it was $6,000. Now, that was the Keatings' bid, but again, the law of the case was this wall was to be done. Maybe the Keatings only set aside $6,000, and that, Your Honor, is how, unfortunately, you came up with this phenomenal number. The testimony in this case was, do the south wall, tough point, is $36,470. Now, Your Honor, we just said that the issue is, you know, was the award of damage against the management square the evidence? Yes, because it's the only evidence in this case. The only evidence in this case is that what's it going to cost to tough point the south wall was $36,470. Was there any cross-examination as to the disparity in those numbers? Well, no to that answer, because there wasn't a disparity in the numbers. The Keatings don't contend they had to do the south wall, so their bid is what their bid was. Okay. So I'm not trying to say there wasn't. No, I mean, there's obviously a difference between the two numbers, but you're saying that your opponent basically stayed with the proposition that? Really, it was a push. Right. Okay. Now, the only evidence was Mr. Dobrenik at $36,000, and the cross-examination with Mr. Dobrenik was limited. You'll see in the record that the only thing they asked Mr. Dobrenik was, well, you gave this appraisal a year ago. Has the price of change anything? He said no. Other than that, undisputed. Keating is an expert because he does it, right? He testified. Yes, sir. But most of his testimony, again, your Honor, I'm sure you've looked at the record. You'll see which record you really think we got in this small portion. Well, the law in this case is, no, he had to do the south wall. Okay. So the only evidence for the south wall was the cost of $36,740. We agree there's $6,000 left that had to be appraised against whatever the damages were, and it would have been $30,470. And if you add the $1,600, that's a quart of water that should have been a quart of water, $32,089.86. Why? Because the general measure of damages under contract breach, something we all learned in law school that first article of semester, was that the damaged party must be put in the same position as if the contract had been fully performed. Contract law in this case was that whole south wall, you've got to do it. Put us there, you've got to give us this money. I understand, Your Honor, that at first glance you say, my goodness, it's more than the whole contract price. But was there any evidence that that's not right? No. It should have been set up. We refer you out to an earlier decision. This court's a proven decision. Justice Jones talked about that. And amazingly enough, that's the only case that was really discussed in the briefs where both issues, the concept has an issue, that there is an alternate suggestion about damages under the law, particularly when me, Mr. Contractor, built a swimming pool, and I screw up the steps. As opposed to be a slope, slide, or whatever. And now to fix it, we've got to tear this swimming pool up. Or when they're building a building, and they're supposed to use it under my client, the case was cited by counsel that referred to in the brief, and it's the Mayfield case, the Witte case, where we want a brick on our house that matches the other part of the house. Contractor put the wrong brick in. Oh, my God, we better not. Now we've got to tear all the brick out and put the other brick in. And in those cases, there is an alternate measure. The alternate measure is what's the difference in value as to what I should buy as to what I didn't. Now, what evidence was given to that in this case? None. None whatsoever. Why? Because it doesn't really apply. Why? Because if you look at all those cases, cited by counsel, if you look at our required review to analyze these cases separately, those are cases where there has to be some destruction of what's already been done. And courts have said, boy, in those cases, we may not pay for destruction and pay for the rebuilding because it gets to be in this phenomenal figure. And, Your Honor, but that's not this case. We're not doing any destruction here. We're doing what the contract said. But you asked for $6,000, and that's what the court awarded. No, I didn't ask for $6,000. We asked for $30,000. $30,000. $30,000. We asked the courts to award based on the damages. $6,000 was what was left on the contract. Yeah, and didn't you file a small claims complaint for that amount? No. Actually, the way it gets mixed up with the procedure here is, actually, the Keatons have sued my client in small claims court for the $6,000. I then filed an LM case to reverse. So, no, sir, we never filed. Sorry. Okay. Anyway, there's no destruction. Because there's no destruction, that second line of cases that says, hey, we're not going to tear something down just because it's not the right color of brick. We're not going to lose a swimming pool just because there's four steps instead of three. But there's no destruction here. It didn't award. How do we explain the misunderstanding? Well, the Keatons didn't think they were supposed to do what they were supposed to do. They say we're not supposed to do this law, and we're not supposed to do that law. And the court said, nope. The contract says we're not supposed to do the contract. Although, it's not an issue of disappeal. It's the law of this case that the whole softball is to be toughened. When you take that and you say, okay, the trial court said 6,000 is due. Clearly, mathematically, the Keatons set aside 6,000 because it's the same debt to the front of the building as the other company. So, set those two off and award other damages. But that's not a measure of damage. That, by the way, isn't even a measure of damage. It's a measure of the alternate theory of what you have to do. The structure is decided by the athlete in their group. It is an alternate that is not applicable in this case. The court, doing this somewhat set aside, wasn't really following any of the damages. The court's decision is against the only case for the award issue that factor was there. What's it going to cost to put the plaintiff in the same position the Yes, you get credit for 6, but you still get 30 pounds. That's the decision. That's the reasoning of this court in the Brewer case. That should be the reasoning of this court in reversing the matter and remanding it to the circuit court in Montgomery County and telling them, you have to award damages based on the only evidence in the case. Again, it's the only evidence in the case. If you're honest, look at some of the decisions decided by counsel about, well, what about value? That law is out there. We're telling you it doesn't apply because there's no destruction here. But even if you suggest it applies, how is it out there? It was contract law. These aren't new cases. Then you put on evidence the value. You put on your evidence the definition of value so that the court can make a ruling in your favor if you lose on one issue. They chose not to.  It's important to say that a decision of the circuit court was against the manifest way of the evidence. But as I've indicated numerous times, it's the only evidence. It's got to be deeply, because there's no way on the other side. It's the only evidence as to what the south wall cost to be cut point. We ask the Congress to reverse the circuit court in Montgomery County, ask them to remand it in the direction that they make the proper award for damages as we have outlined. Unless there's further questions, I'll deal with the rest of my time. Thank you. Thank you. We'll have an opportunity for rebuttal. Mr. Cullison. I'm pleased to report that I'll support the appellants. I'm Steve Cullison from Hillsborough, and I represent the appellants, the Keatons, in this case. This matter started out as a remodeling contract. Keatons, my clients, were the contractors. The appellant, the bailing, was the property owner. This involved a building in the downtown business district of Litchfield, typical of old storefront buildings. The buildings in this area were probably in excess of 100 years old. And this contract was for a remodeling of the exterior of the building to improve its appearance. The building at some point in time, the front of it, and a small portion of one side wall referred to as the side wall, had previously been covered with some large blue metal panels that completely covered the brickwork on the front. And this project was to remove these metal panels, expose the previous original brickwork, put in new windows on the front, and various other work on the front of the building. My clients worked on this project off and on for approximately three months, and at one point in time believed that they had fulfilled their contractual obligations. A dispute arose between the property owner and the contractor. The contractor believed that the Keatons had performed all that they were required to do. The property owner believed that further work was needed to be done pursuant to the original agreement, which was for $24,000 total price. During the course of the work, the Keatons had been paid $18,000. All of that was agreed to by the parties and was undisputed. This disagreement escalated between the parties, and the Keatons were ordered to vacate the premises, which they did do. Ultimately, the Keatons initiated this litigation by filing a small claim suit seeking $6,000 for keeping the unpaid balance of the contract. The property owner, Bailey, the appellant, filed a law case, which in effect was a counterclaim but could not be designated as a counterclaim because of the jurisdictional limits of the original small claims case, seeking $36,000 or more in damages. At the trial, there was extensive testimony and evidence presented as to the position of the Keatons. The contractor was that the reference in the written contract to the south wall, which was a side wall of this building, meant only a small portion of the south wall was covered with blue metal panels like the original, like the front of the building, and that they were only obligated to remove the blue panels from the side wall of the south wall and that performs the checkpoint in that area. The position of the owner of the building, Bailey, was that the reference in the written contract to the south wall meant the entire south wall. After hearing extensive evidence on this issue, the trial court ruled in favor of the property owner and said the south wall meant the entire south wall. Even though the contractor disagreed with that, he was forced to accept the rulings and findings of the trial court on that, that the work was incomplete. The issue then became what was the appropriate amount of damages to be awarded for the incomplete performance of the contract. Bailey, the property owner, took the position that, based on the evidence of another contractor, that $36,000 would be the cost of finishing the work on the south wall. The position, of course, of the contractor, Keaton, my client, was that this was totally disproportionate to the original contract, which was for $24,000 for the entire project, that they performed a great deal of work on the front of the building and installing new windows on the front of the building and so forth, all of which was undisputed and for which they'd already been paid $18,000. You see, at one point in time during the testimony of the trial, Bailey, the property owner, had stated that he would tell $6,000 from the contractual payment because he believed that $6,000, the difference being the $18,000 paid and the $24,000 contract price, was what he attributed to the work that would be done on the south wall based upon previous estimates that he had obtained and so forth. At the conclusion of the trial, the trial court found that the appropriate amount of damages for the incomplete work on the south wall would be the $6,000 that had been withheld by the property owner from payment and thus the Keatons were denied recovery for that $6,000 and that was acted as a set-off for the damages sought by the property owner. As pointed out by the appellant, the standard measure of damages for breach of this type of construction contract would be the cost of finishing the contract or the cost of repairs. Did the trial court specify what the set-off was for, specifically in order or in the record in any way? Because it got down to, what, $1,600 roughly? The $1,600 was for some small matters. There were a couple of set-offs going both ways that were not really relevant to the appeal. The trial court did state orally as the ruling was made at the end of the trial that he found that $6,000 would be the damages for the failure to complete work on the south wall and that he was setting that off against the claim of bailing the appellant. And the $1,600 was, he then specified as to some small matters where there were set-offs on both for the appellant and the appellee, which are really not part of the issues on the appeal. There are cases cited by, we have cited cases in the appellee's brief, particularly the Mayfield v. Swofford case and the Whitty v. Casey Holmes case, where the trial court, after finding that there's been some type of breach of the construction contract, stated that the normal standard for measure of damages, being the cost of repairs, would not apply if the cost of repair is disproportionate to the results obtained. And the appellant has referred to cases where they say that the cost of repair would not apply if there's substantial damage due to work that has already been done and would cause the destruction of the work that's been done. The courts not only say that that is true, but they also say that the normal standard should not apply if the cost of repair is disproportionate to the results obtained. And in the Swofford v. Mayfield case, we had a defective work on a swimming pool, the original cost of the swimming pool was $7,000. The cost of repairs was going to be, I believe, approximately $11,500. The court found that this was disproportionate to the cost of repairs for the original contract and that the cost of repair standard should not apply. The case of Whitty v. Casey Holmes, this case is also about brickwork to a house that was defective for cosmetic reasons. The court found that the original cost of the house was about $56,000. The cost of completely replacing the bricks and brickwork would be about $50,000. Therefore, the cost of repair would be greatly disproportionate to the benefit obtained by the property owner. Therefore, the cost of repair standard should not apply. I think that is exactly what we have in this case. We have a situation where the appellant, the property owner, is claiming that he should be awarded damages of $36,000 for finishing some checkpointing work on a particular wall. The original contract price was $24,000 and that substantial work was done on that contract and other areas of the building, particularly the front wall, the front windows, and so forth, for which the property owner himself has said I've paid $18,000 and I think that's fair for the work that has already been done. So we have the disagreement over $6,000 remaining on the contract and now the property owner is claiming that he should be awarded damages of $36,000, which seems greatly disproportionate to the benefit that would be obtained by the property owner. I think the cases that are cited in the appellee's brief show that the court is justified under these circumstances in rejecting the normal standard of cost of repair for damages and accepting a different standard. And under these circumstances here, the court was very justified in finding that the property owner had stated that he withheld $6,000 from the payment of the contract price because he regarded $6,000 to be attributable to the work on the south wall that was not done. Therefore, that was a fair measure of damages for failure to perform that work. This was a disclosed expert, I assume. You knew beforehand? Was there a discovery beforehand? You knew that the contractor was going to present this expert, that Bailey was going to present this expert that was going to ask for $36,000? He was listed as a witness, yes. I don't believe there were any written reports provided or anything that he was listed as a witness. So you had no idea going into trial he was going to ask for $36,000? I don't believe the exact amount was known. Of course, the contractor adamantly felt that they were not obligated to perform work on the entire south wall. Most of the testimony in trial was directed to whether the south wall meant a part of the south wall covered by blue panels or the entire south wall. Thank you. If there are no questions, I'll wait the rest of my time. Thank you. Thank you, Mr. Coulson. Mr. Finch. Thank you. Just a question, yes, an interesting question, and the answer is different than counsel gave. If you look in the record, here's the reason why the record will show that. We did disclose Mr. McGrenick, and we did, in fact, have a written estimate, which is admitted in the trial as Exhibit 1. The reason we show that you knew it ahead of time is because the questions by Mr. Coulson at the trial to this witness was, well, I look at your estimate here, it's a year and a half old because it was given as part of the preparation of the trial. Does it change now that it's a year and a half old? The answer is no, but yes, they knew the witness, they knew his testimony. The ultimate theory, first of all, the cases that you look at say destruction. In the Mayfield case, they had to destruct the swimming pool. In the Witte case, they had to tear the bricks off. It's a destruction case, but most importantly is there's, in those cases, the standard, they end up saying, well, then it's a setup, because a setup may not apply. They tell you do based on the value evidence. Well, there was no value evidence in this case. Well, we didn't submit it. Why? Because I didn't want to submit it, because I knew what the standard should be. This wasn't a destruction case. We submitted the proper standard evidence to support it, which is Mr. Dubranik's opinion. So the value cases don't apply factually. They also don't apply legally, because there was no evidence of value. Mr. Coulson, why have evidence in this court? It wasn't presented. It can't be the basis for a decision. The testimony of Bailey looked at pages 72 and 74. You're going to find what he said is it would appear that, in his opinion, the key to set aside $6,000 would be the top one. Well, that wasn't too hard. Most of it's mathematical. Even lawyers can do, well, perhaps 24 and 18 was the front, but I've got another one that said 18 for the front and 76. It must have been the $6,000 they set aside for the top one. But the problem is, and it's a lot of case here, Mr. Coulson told you, well, someone took the panels off of one portion of the south wall, and that's all there is to it. Yes, that may be what they put their bid on, but they didn't put their bid on the entire south wall. The trial court said the entire south wall under the contract that you wrote, Keaton's, and that issue has never been appealed. It's law in this case. Your Honor, the Brewer Court, this court, said, and I'll read it, as a general rule, the measure of damages when performed by a builder has been less than full performance is the cost of correcting the defects or completing the admission, rather than the difference in value between what ought to have been done and what was actually done. It's not value. It's cost of repair. This court went on to say, but this general rule only applies when the correction or completion would not involve unreasonable destruction of work done by the contractor, and the cost thereof would not be grossly disproportionate. Well, it's grossly disproportionate because you're tearing something down. This wasn't a tear-down case. Your Honor, the only evidence that the trial court, consistent with its finding that the entire south wall needed to be tucked away, was $36,600. Take the $6,000 of credits still remaining. It's $30,470. Add it to $1,600, and you come up with that $32,000 figure mathematically. It's in our brief. We ask Your Honor to reverse and remand with your records as to proper damages. Thank you very much. Thank you, gentlemen, both for your briefs and argument, and we'll take the matter under advisement.